## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLUMIDE ONAJIDE, <br><br> Plaintiffs, <br><br> - against - <br><br> THE ALUMNI GROUP ENTERTAINMENT, LLC , THE ALUMNI GROUP, LLC, MARSHMALLOW (ST. LUCIA) Ltd.,  PB&J RESORTS II (JAMAICA) LIMITED D/B/A HEDONISM II, PB&J RESORTS LLC, FRANDY NAPOLEON. <br><br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT** <br><br> (Jury Trial Demanded) |

## COMPLAINT

COME NOW Olumide Onajide ("Plaintiff"), by and through undersigned counsel, as and for their Complaint against Defendants The Alumni Group Entertainment LLC, The Alumni Group LLC, Marshmallow (St. Lucia) Ltd., PB&J Resorts II (Jamaica) Limited D/B/A Hedonism II, PB&J Resorts, LLC and Frandy Napoleon, (collectively, "Defendants") allege as follows:

## INTRODUCTION

1.      Upon information and belief, Defendants have pirated and altered the image, likeness and identity of Plaintiff for purely self-serving commercial purposes.

2.      Advertisements containing the unauthorized image identified in this Complaint were never negotiated or purchased by Defendants and have been posted by Defendants for the purpose of advertising, promoting and marketing Defendants' business interests.

3.      Defendants did not seek consent to use any image identified herein. Had Plaintiff

been afforded the opportunity to consider whether to consent and release rights as to the use or alteration of any image, Plaintiff would have promptly declined.

4.     Defendants' actions are misleading and injurious to Plaintiff by falsely and fraudulently representing that Plaintiff is somehow affiliated with Defendants, has contracted to perform at and/or participate in events at Hedonism II and/or has been hired to promote, advertise, market or endorse its events at its adults-only, clothing-optional resort, inviting attendees to "Get Chocolate "Wasted With" and "Pursue Pleasure" with the Plaintiff in connection with sexually explicit events.

5.     They also create the false and fraudulent representation Plaintiff will attend each event and participate in the activities advertised.

6.     By using the image, likeness and identity without authority or consent, Defendants have jeopardized Plaintiff's image, brand and marketability.

7.     Defendants' conduct has deprived Plaintiff the opportunity to engage in arms-length negotiations regarding the terms and conditions of use of his image, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely.

8.     Having operated a business in the adult entertainment industry, Defendants are well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

9.     Despite being well aware of an obligation to do so, Defendants never negotiated for or purchased any image of Plaintiff.  On the contrary, Defendants circumvented the typical arms-length negotiation process entirely and pirated the image. In doing so, Defendants deprived Plaintiff of his right to say "no," to protect his image, brand and reputation, and gained a windfall by using and altering for Defendants' own commercial purposes the image Plaintiff,  a professional

2

and successful model and television personality, without having to compensate Plaintiff a single penny for such usage.

10.    Plaintiff seeks, among other relief, an Order immediately and permanently enjoining Defendants' illegal activities, and compelling Defendants to appropriately compensate Plaintiff for the theft and piracy of his image.

## PARTIES

11.    Plaintiff Olumide Onajide is, and at all times relevant to this action was, a professional model, personal fitness trainer, television personality, and a resident of Newark, New Jersey.

12.    Based upon publicly available records, and further upon information and belief, Defendant The Alumni Group Entertainment, LLC. ("TAGE") is a limited liability corporation organized and existing under the laws of New York with a principal place of business at 7014 13th Avenue, Suite 202, Brooklyn NY, 11228.

13.    Upon information and belief, TAGE operates and does business as "The Alumni Group."

14.    TAGE is a private, travel agency engaging in the business of and hosting adult entertainment involving live nude guests and models, sexually explicit events, and other related activities.

15.    Upon information and belief, TAGE coordinates its advertising, marketing and promotional activities in interstate commerce through, among other things, active and dynamic use of such websites as www.thealumnigrouptravel.com, hedonism.com, and traveljoy.com and various social media outlets such as Facebook, TikTok, and Instagram, among others.

16.    Upon information and belief, Defendant TAGE's business, services, events and attractions are conducted in interstate commerce.

17.    Based upon publicly available records, and further upon information and belief, Defendant The Alumni Group, LLC. ("Alumni Group") is a limited liability corporation organized and existing under the laws of New York with a principal place of business at 12 West 23rd Street, 4th Floor, New York, New York 10010.

18.    Upon information and belief, the Alumni Group operates and does business as "The Alumni Group".

19.    The Alumni Group is a private, travel agency engaging in the business of and hosting adult entertainment involving live nude guests and models, sexually explicit events, and other related activities.

20.    Upon information and belief, the Alumni Group coordinates its advertising, marketing and promotional activities in interstate commerce through, among other things, active and dynamic use of such websites as www.thealumnigrouptravel.com, hedonism.com, and traveljoy.com and various social media outlets such as Facebook, TikTok, and Instagram, among others.

21.    Upon information and belief, Defendant Alumni Group's business, services, events and attractions are conducted in interstate commerce.

22.    Based upon publicly available records, and further upon information and belief Marshmallow Ltd (St. Lucia) Ltd ("Marshmallow") is a St. Lucian corporation with its principal place of business at Hewanorra House Trou Garnier Financial Centre Point Seraphine, Castries Saint Lucia, and is the parent company of PB & J Resorts II (Jamaica) Limited D/B/A Hedonism II.

23.    Marshmallow regularly conducts business within New York through its partnership with TAGE and/or the Alumni Group.

24.    Further, upon information and belief, the Marshmallow coordinates its advertising,

marketing and promotional activities in interstate commerce through, among other things, active and dynamic use of such websites as www.thealumnigrouptravel.com, hedonism.com, traveljoy.com and various social media outlets such as Facebook, TikTok, and Instagram, among others.

25.    Upon information and belief, Defendant Marshmallow's services, events and attractions are conducted in interstate commerce.

26.    Based upon publicly available records, and further upon information and belief, PB&J Resorts II (Jamaica) Limited D/B/A Hedonism II ("Hedonism") is a corporation organized and existing under the laws of Jamaica with a principal place of business at Norman Manley Blvd, Negril, Jamaica.

27.    Based upon publicly available records, and further upon information and belief Hedonism has a mailing address of P.O. Box 35 Norman Manley Blvd., Negril, Jamaica.

28.    Hedonism is a private, adults-only resort engaging in the business of and hosting adult entertainment involving live nude guests and models, sexually explicit events, and other related activities.

29.    Upon information and belief, Hedonism coordinates its advertising, marketing and promotional activities in interstate commerce through, among other things, active and dynamic use of such websites as hedonism.com, www.thealumnigrouptravel.com, and traveljoy.com and various social media outlets such as Facebook, TikTok, X (formerly known as Twitter), YouTube and Instagram, among others.

30.    Upon information and belief, Defendant Hedonism's business, services, events and attractions are conducted in interstate commerce.

31.    Based upon publicly available records, and further upon information and belief, PB&J Resorts LLC. ("PB&J"), is a limited liability corporation organized and existing under

the laws of Delaware with a principal place of business at 6624 Whiting Drive, Troy, MI, 48098.

32.    Upon information and belief, PB&J is the management and operating company for Hedonism.

33.    Based upon publicly available records, and further upon information and belief, the members of PB&J are Harry W. Lange, a citizen of Michigan, and Jon Gross, a citizen of New Hampshire.

34.    PB&J regularly conducts business within New York through its partnership with TAGE and/or the Alumni Group Upon information and belief, PB&J coordinates its advertising, marketing and promotional activities in interstate commerce through, among other things, active and dynamic use of such websites as hedonism.com, www.thealumnigrouptravel.com, and traveljoy.com and various social media outlets such as Facebook, TikTok, X (formerly known as Twitter), YouTube and Instagram, among others.

35.    Upon information and belief, Defendant Hedonism's business, services, events and attractions are conducted in interstate commerce.

36.    Upon information and belief, Defendant Frandy Napoleon ("Napoleon"), is an individual who works and/or resides in New York.

37.    Upon information and belief, at all times relevant to the allegations set forth herein, Napoleon served as the Chief Executive Officer ("CEO"), President, and/or otherwise exercised control over TAGE and/or the Alumni Group.

38.    As CEO, Napoleon had operational  and managerial control over the business operations of TAGE and/or the Alumni Group and decision-making authority for TAGE and/or the Alumni Group, including decisions relating to TAGE and/or the Alumni Group's promotional, advertising, marketing and endorsement activities such as those detailed in this Complaint.

## JURISDICTION AND VENUE

39.    This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiff has stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

40.    In the alternative, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as this case involves an action by Plaintiff, a citizen of New Jersey, TAGE, an LLC with a member who is a citizen of New York, the Alumni Group, an LLC with a member who is a citizen of New York, Marshmallow, a corporation with its principal place of business in St. Lucia, Hedonism, a corporations with its principal place of business in Jamaica, and Napoleon, a citizen of New York.

41.    Additionally, upon information and belief, the amount in controversy exceeds $75,000.

42.    This Court has supplemental jurisdiction over the New York state law claims alleged herein pursuant to 28 U.S.C. § 1367.

43.    The Court has personal jurisdiction over Defendant TAGE based on its contacts with the State of New York, including, but not limited to, TAGE being registered in New York to do business, having its physical location  and principal place of business in New York, its members are domiciled in the State of New York, and committing the actions giving rise to the harm and damages alleged herein in the State of New York.

44.    The Court has personal jurisdiction over Defendant Alumni Group based on its contacts with the State of New York, including, but not limited to, Alumni Group being registered in New York to do business, having its physical location  and principal place of business in New York, its members are domiciled in the State of New York, and committing the actions giving rise to the harm and damages alleged herein in the State of New York.

45.    The Court has personal jurisdiction over Defendant Marshmallow based on its

contacts with the State of New York, including but not limited to its business partnership with TAGE, the Alumni Group, and/or Napoleon to promote its events, including the event at issue involving Plaintiff, in New York, coordinating its advertising, marketing and promotional activities in interstate commerce through, among other things, active and dynamic use of such websites as hedonism.com and traveljoy.com and various social media outlets such as Facebook, TikTok, X (formerly known as Twitter), YouTube and Instagram, among others, and committing the actions giving rise to the harm and damages alleged herein in the State of New York, City of New York, County of New York.

46.    The Court has personal jurisdiction over Defendant Hedonism based on its contacts with the State of New York, including but not limited to its business partnership with TAGE, the Alumni Group, and/or Napoleon to promote its events, including the event at issue, in New York, coordinating its advertising, marketing and promotional activities in interstate commerce through, among other things, active and dynamic use of such websites as hedonism.com and traveljoy.com and various social media outlets such as Facebook, TikTok, X (formerly known as Twitter), YouTube and Instagram, among others, and committing the actions giving rise to the harm and damages alleged herein in the state of New York.

47.    The Court has personal jurisdiction over Defendant PB&J based on its contacts with the State of New York, including but not limited to its business partnership with TAGE, the Alumni Group, and/or Napoleon to promote its events, including the event at issue involving Plaintiff, in New York, coordinating its advertising, marketing and promotional activities in interstate commerce through, among other things, active and dynamic use of such websites as hedonism.com and traveljoy.com and various social media outlets such as Facebook, TikTok, X (formerly known as Twitter), YouTube and Instagram, among others, and committing the actions giving rise to the harm and damages alleged herein in the State of New York, City of New York,

County of New York.

48.    The Court has personal jurisdiction over Defendant Napoleon.  Napoleon lives and works in the State of New York, upon information and belief is the Chief Executive Officer ("CEO"), President, and/or otherwise exercises control over TAGE and/or the Alumni Group in the state of New York, and, upon information and belief, is ultimately responsible for the decisions and business choices for TAGE and/or the Alumni Group that give rise to the allegations in this Complaint.

49.    Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(a) and (b) because Defendant TAGE has its principal place of business in Brooklyn, New York, located in the City of New York, County of Kings and all acts giving rise to the claims set forth herein occurred or originated in New York and/or Kings County, New York.

50.    Further, Defendant Alumni Group has its principal place of business in New York, New York, located in the City of New York, County of New York and all acts  giving rise to the claims set forth herein occurred or originated in New York and/or Kings County.

51.    Further, Defendant Marshmallow's acts  giving rise to the claims set forth herein occurred or originated in New York and/or Kings County, New York.

52.    Further, Hedonism's acts  giving rise to the claims set forth herein occurred or originated in New York and/or Kings County, New York.

53.    Further, PB&J's acts  giving rise to the claims set forth herein occurred or originated in New York and/or Kings County, New York.

54.    Further, upon information and belief, Defendant Napoleon works and resides in New York, New York.

**FACTUAL BACKGROUND**
**A.  Standard   and   Customary   Business   Practices   in   the   Entertainment   and   Fitness**

**Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images**

55.    Plaintiff is a professional model, personal fitness trainer, and television personality who appeared on Season 18 the popular reality television show *ABC's The Bachelorette* in 2021 and on Season 8 of their spinoff show *Bachelor in Paradise*, in 2022.

56.    Plaintiff earns a living by promoting his image and likeness to selected clients, commercial brands, media and entertainment outlets, as well as relying on his reputation and own brand for modeling, training and other opportunities.

57.    Plaintiff's career in modeling, training, and private enterprise has value stemming from the goodwill and reputation he has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

58.    In the entertainment and modeling industry, individuals such as Plaintiff typically do not have a single employer. Instead, entertainers and models such as Plaintiff work on an independent contractor basis for different agents or entities.

59.    Plaintiff is a responsible professional in the ordinary course. Plaintiff seeks to control the use and dissemination of his image and, thus, actively participates in vetting and selecting modeling,  brand spokesperson, or personal training engagements.

60.    An entertainer's and model's vetting and selection of a professional engagement involves a multi- dimensional assessment, to wit:

  a.  determine whether the individual or entity seeking a license and release of an entertainer's and/or model's image, likeness or identity is reputable, has reputable products  or services, and, through affiliation therewith, would enhance or harm a entertainer's and/or model's stature or reputation;

  b.  this reputational information is used in negotiating compensation. The negotiated compensation typically depends on the work an entertainer and/or model is hired

to do, the time involved, travel and how his image is going to be used (among other variables);

c.  to protect his reputation and livelihood, an entertainer and/or model or his agent carefully and expressly defines the terms and conditions of use;

d.  the entire negotiated deal is reduced to and memorialized in an integrated, written agreement which defines the parties' relationship. The terms and conditions of the

Agreement typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that Agreement.

61.    In the entertainment and modeling industry, reputation is critical. Endorsing, promoting, advertising or marketing the "wrong" product, or working in a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities.

62.    Conversely, association with high-end companies, products, or magazines can enhance a model's earning potential and career opportunities by making a model more sought after and desirable.

63.    For these reasons, *if* an entertainer or model chose to jeopardize his career for a compromising engagement (such as appearing in an advertisement for an event that hosts adult entertainment involving live nude guests and models, sexually explicit events, and other related activities), the fee he would charge would necessarily exceed the fee he would charge for more mainstream and reputable work.

B.  **Defendants Have Used and Altered Plaintiff's Image, Likeness and Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to Any Plaintiff**

64.    Plaintiff is a television personality, model, and personal fitness trainer who has built

a livelihood promoting his images and likenesses to selected clients and relies on his reputation and own brand for modeling, personal training engagements, and other opportunities.

65.    Plaintiff's career in modeling, personal training, and private enterprise has value stemming from the goodwill and reputation he has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

66.    Plaintiff has worked to establish himself as reliable, reputable and professional. Plaintiff must necessarily be vigilant in protecting his "brand" from harm, taint, or other diminution. Any improper or unauthorized use of an image, likeness or identity could substantially injure the career and career opportunities of Plaintiff.

67.    In all instances of commercial marketing and promotion of his image, likeness or identity by third parties, Plaintiff negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

68.    Plaintiff's image, likeness and identity are depicted in at least one  photo, enclosed as **Exhibit A**[1] to the Complaint, which has been used and altered to create the false perception that Plaintiff has consented or agreed to promote, advertise, market and/or endorse the Resorts "Adults Only Clothing Optional" event where there are "ABSOLUTELY NO CELL PHONES OR PHOTOGRAPHY ALLOWED", all to benefit Defendants' commercial interests.

69.    Plaintiff's image, likeness and identity in Exhibit A are being used as advertising.

70.    Plaintiff's image, likeness and identity in Exhibit A are being used on social media.

71.    Upon information and belief, Defendants used Plaintiff's image, likeness, and identity in Exhibit A on or about March 1, 2025.

72.    Plaintiff's image, likeness and identity in Exhibit A are tagged with "CHOCO

---

[1] The identity of individuals who are not the Plaintiff have been redacted.

BLISS," "HEDONISM II" and thealumnigrouptravel.com/chocobliss and being used for branding purposes.

73.    Plaintiff's image, likeness and identity in Exhibit A are being used for branding purposes on https://hedonism.com/event/choco-bliss/ and thealumnigrouptravel.com/chocobliss.

74.    Plaintiff's image, likeness and/or identity has been misappropriated and intentionally altered by or at the direction of Defendants.

75.    Defendants' conduct creates the false and misleading appearance and impression that Plaintiff either works for Defendants, has appeared or will appear in sexually explicit events at the Resort, and/or has agreed and consented to advertise, promote, market or endorse Defendants' business, the Resort or one or more Resort events or activities.

76.    Plaintiff has never been employed by Defendants nor contracted with Defendants to participate in any activities on or for the Resort.

77.    Plaintiff has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants business, the Resort or any Resort event.

78.    Defendants never sought permission nor authority to use or alter Plaintiff's image, likeness or identity to advertise, promote, market or endorse Defendants, the Resort, or any Resort event.

79.    Plaintiff never gave permission, assigned, licensed or otherwise consented to Defendants using or altering his image, likeness or identity to advertise, promote, market or endorse Defendants business, the Resort, or any Resort event.

80.    Defendants neither offered nor paid any compensation to Plaintiff for the unauthorized use or self-serving alteration of his image, likeness or identity.

81.    Upon information and belief, Defendants' improper use and alteration of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further

utilize and misappropriate Plaintiff's image in their market activities and business. In doing so, Defendants have further damaged Plaintiff.

*Causes of Action*

<u>**COUNT I**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125:**
**False Endorsement/Unfair Competition as to all Defendants)**

82.     Plaintiff hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

83.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Plaintiff from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

84.     Defendants used Plaintiff's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Plaintiff worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, or consented to or authorized Defendants' or the Resort's usage of his images in order to advertise, promote, and market Defendants business, or the Resort's events and activities.

85.     Defendants' unauthorized use and alteration of Plaintiff's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

86.     Defendants' unauthorized use and alteration of Plaintiff's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Resort, as to whether

Plaintiff worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of his images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

87.     Upon information and belief, Defendants' unauthorized use or alteration of Plaintiff's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Plaintiff worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of his images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

88.     Defendants knew or should have known that their unauthorized use and alteration of Plaintiff's image, likeness and identity would cause consumer confusion as described above.

89.     Defendants' unauthorized use and alteration of Plaintiff's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

## PLAINTIFF COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

90.     Plaintiff hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

91.     Defendants altered  Plaintiff's image to create the false appearance, perception and impression that Plaintiff worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage of his images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

92.     Defendants published such altered Plaintiff images in New York through  online advertisements and through various social media outlets as described herein that were used,

operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Resort, attract business to the Resort and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Resort and Defendants.

93.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Plaintiff's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

94.    No applicable privilege or authorization exists for Defendants' use of Plaintiff's image, likeness or identity.

95.    Defendants were aware at all relevant times that they never received Plaintiff's authority, permission or consent to use or alter his images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Resort, attracting business and generating revenue for Defendants.

96.    At no time have Defendants ever compensated Plaintiff for the unauthorized use or alteration of his image, likeness or identity.

97.    As described herein, Defendants violated Plaintiff's right of privacy, violated his right of publicity, misappropriated his image, likeness and identity, and altered and published same without Plaintiff's authority or consent.

98.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

99.    Defendants' misconduct was knowing and willful.

100.    Defendants' misconduct evinces intentional action and/or reckless disregard of Plaintiff's rights.

101.    Due to Defendants' violation of Plaintiff's rights of privacy and publicity under

sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiff has been damaged in an amount to be determined at trial.

102.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Plaintiff further requests an Order permanently enjoining Defendants from further violating Plaintiff's rights of privacy and publicity.

103.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Plaintiff further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

### PLAINTIFF COUNT III
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act as to all Defendants)**

104.    Plaintiff hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

105.    Defendants used, operated, owned, controlled, and/or managed, among others, https://hedonism.com/event/choco-bliss/ and thealumnigrouptravel.com/chocobliss, as  well  as various  social  media  outlets  such  as Facebook, TikTok, and Instagram, among others, in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

106.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national, and international clientele.

107.    Defendants published Plaintiff's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Plaintiff's affiliation with the Resort, or participation in or endorsement of the advertised events and activities at the Resort, among other objectives.

108.    In publishing Plaintiff's image, likeness and identity as described herein, Defendants

intended to mislead the public.

109.   At all times, Defendants knew Plaintiff was not affiliated with the Resort, knew that Plaintiff was not going to participate in any Resort events and activities, and knew Plaintiff did not endorse Defendants' business, the Resort or the Resort's events and activities.

110.   Defendants' publication of Plaintiff's image, likeness and identity as described herein was done without Plaintiff's consent or authorization.

111.   Defendants' unauthorized publication of Plaintiff's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Plaintiff, in fact, was in some way affiliated with the Resort, participated in the advertised events and activities, and/or endorsed Defendants' business, the Resort or the Resort's events and activities.

112.   Defendants' unauthorized and misleading publication of Plaintiff's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Plaintiff's reputation and marketability in an amount to be determined at trial.

**PLAINTIFF COUNT IV**
**(Defamation and Defamation Per Se as to all Defendants)**

113.   Plaintiff hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

114.   Defendants' unauthorized use and publication of Plaintiff's altered image(s), likeness and/or identity constitutes false representations or statements by implication about Plaintiff's affiliation with or employment by the Resort, and his participation in the Resort or his endorsement of the advertised activities at the Resort.

115.   Defendants' unauthorized use and publication of Plaintiff's altered image(s), likeness and/or identity affirmatively constitutes false representations or statements by implication about Plaintiff's affiliation with or employment by the Resort, and Defendant intended or endorsed

such defamatory and false inferences implied by Defendants' advertisements.

116.   Defendants' representation or statements by implication were knowingly false.

117.   At all times relevant to matters raised in this Complaint, Defendants knew  that Plaintiff was not affiliated with or employed by the Resort, Defendants knew that Plaintiff would not have participated in the events at the Resort, knew that Plaintiff did not endorse Defendants' business, the Resort or the Resort events, and knew that Plaintiff has not been appropriately compensated for such use.

118.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered image of Plaintiff to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

119.   Defendants used and published such false statements by implication, and did so in a manner and at a time shown in **Exhibit A**, and such false statements were disseminated to several persons viewing Defendants' social media pages and websites.

120.   Defendants' use and publication of Plaintiff's altered image was defamatory.

121.   Defendants' unauthorized use and publication of Plaintiff's altered image and knowingly false representations and/or statements by implication about Plaintiff were  made with actual malice.

122.   Defendants' representations and statements falsely impute to Plaintiff a matter, practice or course of conduct incompatible with his business, trade or profession as a legitimate and successful professional model, fitness trainer, and television personality.   He is not a participant in the events or profession offered and hosted at the Resort, or employed or contracted by the Resort to appear, perform, host, model or otherwise serve as a paid participant in the activities and events at the Resort for which his image, likeness and/or identity was used.

123.   Such false and defamatory representations and statements about Plaintiff were

published to innumerable current and prospective customers and promoters.

124.   Defendants knew that their conduct described herein was wrongful and false.

125.   Defendants intended to deprive Plaintiff of a property interest or, at a minimum, evinced a conscious disregard for the fact that Plaintiff did not consent to Defendants' alteration of his images, likeness or identity to promote, advertise market or endorse the Resort or Defendants' business interests.

126.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiff.

127.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Plaintiff's professional reputation and brand, among other injuries, in an amount to be determined at trial, which is economic and pecuniary value flowing directly from the injury caused by Defendants' defamation.

128.   Defendants' direct use and publication of false and defamatory statements by implication tend to injure Plaintiff in his trade, business and profession.

129.   Therefore, the false statements by implication and/or altered images as published by Defendants constitute defamation *per se*.

130.   Defendants' defamatory statements concerning Plaintiff have damaged his in an amount to be determined at trial.

<u>**PLAINTIFF COUNT V**</u>
**(Negligence as to all Defendants)**

131.   Plaintiff hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

132.   There existed a foreseeable risk, a risk Defendants were aware of, that Plaintiff would be harmed or injured by Defendants' alteration of his image and dissemination of such image on the Internet and through social media, falsely implying that Plaintiff: voluntarily

endorsed Defendants' Resort, was an employee, model, or entertainer at Defendants' Resort, and would attend or participate in the events promoted in the advertisements and events promoted on Defendants' websites.

133.   The risk of harm and danger is obvious when a Resort in the business of hosting adult entertainment involving live nude guests and models, sexually explicit events, and other related activities takes another's image and alters it – a sexual Resort's use of any image of another person to advertise sexually explicit events is inherently dangerous and risky to the person whose image is taken.

134.   In today's Internet advertising age, it is practical and common knowledge that a sexually explicit Resort  must exercise reasonable measures to carefully use images of other persons obtained online so as not to injure them by carelessly or recklessly using a person's images in a manner that falsely implies such person voluntarily endorses a sexually explicit Resort, was an employee, model, or entertainer, at a sexually explicit Resort, and would attend or participate in events promoted in a sexually explicit Resort's advertisements. The danger and  business harm caused  to others by misuse of their image through online advertising in the adult entertainment industry is a known danger.

135.   Reasonable adult entertainment Resorts typically institute measures and/or compliance procedures whereby such businesses ensure that they are properly using others' photographs or images and in a manner so as not to falsely imply that such a person voluntarily endorses a sexually explicit Resort, is an employee, model, or entertainer at a sexually explicit Resort, and would attend  or participate in events promoted in a sexually explicit Resort's advertisements.

136.   Specifically, reasonable adult entertainment Resorts will either use their own employees' images to market their events or verify that they are not using another's image to

spread injurious falsehoods about that person.

137.   Defendants had a statutory duty and a common law duty not to falsely depict someone as a voluntarily spokesperson at their Resort and falsely implying that the individual would be one of the models or entertainers at the sexually explicit Resort.

138.   Thus, when Defendants falsely portrayed Plaintiff as a participant, host, or voluntary spokesperson for their sexually explicit Resort and  implied that Plaintiff would participate, host, or attend the sexually explicit Resort they breached their duty to Plaintiff.

139.   Defendants breached the duty owed to Plaintiff by disseminating altered the image of Plaintiff through Defendants' advertisements coupled with language that, as a whole, falsely implied Plaintiff voluntarily endorsed, worked for, or otherwise participated in Defendants' sexually explicit Resort.

140.   Defendants knew or should have known that the misuse and misappropriation of Plaintiff's image would injure him by implying that he is employed, model, entertainer, or would otherwise participate in any events the sexually explicit  Resort.

141.   Defendants' knew or should have known that Plaintiff would be harmed or injured by Defendants' alteration of his image and dissemination of such image on the Internet and through social media by falsely implying that Plaintiff endorsed or participated in Defendants' sexually explicit Resort.

142.   Defendants' dissemination of Plaintiff's image and false implication that he endorsed or participated in Defendants' business is the proximate cause of injuries sustained by Plaintiff.

143.   Defendants breached their duty of care owed to Plaintiff by falsely implying Plaintiff endorsed or participated in Defendants' sexually explicit Resort, and therefore have damaged Plaintiff in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court grant Judgment to Plaintiff, respectively, and against Defendants as follows:

(a)     Adjudging and decreeing that Defendants have impermissibly and falsely implied Plaintiff's association with, voluntary and authorized promotion, advertising, marketing and endorsement of Defendants' business, the Resort or the Resort's events and activities, have violated Plaintiff's right of privacy, have violated Plaintiff's right of publicity, have defamed Plaintiff, and negligently harmed Plaintiff by impermissible use of image, likeness, and identity;

(b)     Permanently enjoining and restraining Defendants from further violations and misappropriation of Plaintiff's image, likeness and identity;

(c)     Awarding Plaintiff damages including, without limitation, actual or compensatory-type damages from the unauthorized usage of Plaintiff's image, likeness and identity, false endorsement, deceptive practices, violation of right of privacy, and violation of right of publicity, in an amount to be determined at trial.

(d)     Requiring Defendants to account to Plaintiff for any and all earnings and profits derived by Defendants from each violation alleged herein;

(e)     Requiring Defendants to disgorge any fees, profits, or money to Plaintiff by which it has been unjustly enriched;

(f)  Award Plaintiff punitive damages in an amount equal to treble the actual damages awarded at trial;

(g)  Award Plaintiff his costs and disbursements incurred in the prosecution of this action, including reasonable attorneys' fees;

(h)  Granting such other, further or different relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury on all issues so triable.


Respectfully Submitted,


Dated: February 8, 2026


Counsel for Plaintiff
**Artifex Athleta, P.C.**
27 Carpenter Ave, STE 3
Middletown, NY 10940
(929) 816-3011


*D. Riley Christian*
By_____/s/_____
Devon Riley Christian, Esq.
rchristian@artifexathleta.com
Telephone: (929) - 816-3011
SDNY Bar No.:

24